Ex parte Bobbie Jean CRAWFORD.

No. A–12774.

Court of Criminal Appeals of Oklahoma.

July 29, 1959.

Carroll Samara, Paul G. Darrough, Oklahoma City, for petitioner.

Mac Q. Williamson, Atty. Gen., Raymond Theimer, Asst. County Atty., Oklahoma City, for respondent.

NIX, Judge.

The petitioner filed herein a petition for writ of habeas corpus through which she prays for her discharge from a writ of extradition. Petitioner herein resists being turned over to the state of Texas upon the sole grounds that she is not a fugitive from justice as she was not in the state of Texas at the time of the alleged crime.

The facts are that the demanding state contends that the petitioner committed the offense of forgery by writing a $5 check on the 24th day of July, 1958, in the name of B. J. Barton and passing same to Cabell's Minit Market in Midland, Texas. A governor's warrant was issued ordering the petitioner extradited to the state of Texas. An informal hearing was had before the Governor's representative and petitioner ordered sent back to the demanding state. It is alleged at said hearing that petitioner and her witnesses were denied the right to testify, and that the demanding state offered in support of their demand for extradition one witness who was not sworn and did not testify under oath. Petitioner filed a petition for a writ of habeas corpus in the District Court of Oklahoma County. Upon hearing of testimony the court denied the writ. The petitioner then lodged her petition for a writ of habeas corpus in this court. The transcript of the governor's hearing and the testimony of the hearing before the District Court are submitted in support of the petition.

There was submitted in evidence a check in the amount of $5 made payable to the Cabell Minit Market in Midland, Texas, and signed by B. J. Barton, dated July 24, 1958. A witness, Charles Elliott, testified he was cashier at said store and he remembered petitioner as the one who gave him the check. He did not remember having seen the petitioner before nor since until the hearing before the Governor's representative, Mr. Sam Crossland. The time expiring between the dates of giving the check and the hearing was approximately nine months. He testified he noticed no change in her appearance other than she was better dressed. Petitioner denied having been in Texas, denied writing the check, and testified that she left Texas on July 4, 1958, to bring her year old baby to the University Hospital to be treated for a serious liver condition. She further stated that the baby was placed in the hospital on July 7 and remained there until September 10, 1958. This is verified by hospital records. The evidence reflects that on July 24 petitioner was six and one half months pregnant, and was showing conspicuously on that date. Witness Elliott made no mention of this in identifying the petitioner. Petitioner further testified that she stayed with her mother, a resident of Oklahoma county for thirty days, during the time her baby was in the hospital and that she visited her baby at the University Hospital every evening from three until 8 from July 7 until September 10. Her visits were necessary because she was the only one who could feed the baby its evening meal. She stated that she had not been in Texas since July 4, 1958, and definitely did not write nor pass the check in question.

Mrs. H. R. Price, a resident of Oklahoma county, testified she met petitioner at the train on July 5 when she arrived in Oklahoma City and took petitioner to her mother's home. That she saw the petitioner every day during the month of July as she took her to visit the baby every evening from three until eight from July 7 until September 10 and that she could not have been in Texas on July 24.

Petitioner's mother, Mrs. Dick Pugh stated she had lived in Oklahoma City thirty years; that petitioner stayed in her home through the month of July and that she visited the hospital every day to feed the baby; that she was in her home on July 24 and could not have been in Texas.

Mrs. Sarah McArthur, a nurse at the University Hospital, testified that petitioner visited her baby every day from July 7 until September 10 and was the only one who could feed the baby.

Buck Linley Crawford, the husband of the petitioner, testified he lived in Midland, Texas; that he took his wife to the train

on July 4 to bring the baby to University Hospital; that he communicated with his wife at least twice each week by telephone; that his wife had not been back to Texas since she left to his knowledge and that there was nothing between them to keep petitioner from visiting him had she returned.

Carroll Samara, attorney for petitioner, testified that the only person identifying petitioner as the one who gave the check was Mr. Elliott who at the time of the hearing in District Court was wearing unusual thick eye lenses and had an obvious vision deficiency and appeared to be mentally retarded.

The testimony further reflects that petitioner was in court in Oklahoma City during the month of July on a child custody case, wherein her former husband, Mr. Barton, and parents, residents of Midland, Texas, were attempting to take custody of petitioner's minor daughter, then age 10.

▆▆▆▆ Petitioner's brief by innuendo leaves the inference that the extradition is in bad faith and arises from litigation between a former husband and in-laws to obtain custody of petitioner's child. However, this court is concerned chiefly with the question of whether petitioner is a fugitive as to warrant extradition since the passage of the Uniform Criminal Extradition Act 1949, 22 O.S.1951 § 1141.1 et seq. This court has held that the court is limited in its inquiry as stated in the case of Ex parte Deere, 93 Okl.Cr. 291, 227 P.2d 420, 421:

"Where extradition papers required by statute are in proper form and extradition warrant has been issued by the Governor, and the extradition is not based upon the provisions of Sec. 6 of Uniform Criminal Extradition Act, 22 O.S.Supp. § 1141.6, the only evidence admissible on habeas corpus to secure release from custody under the warrant of extradition is such as may tend to prove that defendant was not in demanding state at time crime was allegedly committed, or that the person sought to be extradited is not actually the person charged with the crime in the demanding state."

Prior to that time the court was committed to the rule that the question of good faith of the prosecution is open to inquiry on habeas corpus and that the proceedings may be reviewed to see that no extradition is consummated on a mere pretext or to subserve private malice or some ulterior purpose. However, it is not necessary herein to discuss whether the adoption of the Uniform Criminal Extradition Act completely closes the door to inquiry into motive or good faith where the evidence is clear and convincing, as no evidence was offered in the case at bar, to overcome the presumption of good faith. Under the majority rule the court may inquire into the questions of whether petitioner was the person charged or whether she was a fugitive from justice. In considering the evidence in this respect the court is fully cognizant of its duty and responsibility to lend the state's fullest cooperation to the strict enforcement of the Act and never permit our state to become an asylum for fugitives from justice. On the other hand the authority to protect the citizens of this state from illegal arrest and detention must never be watered down, waived, or abandoned. The requirements which the demanding state must adhere to are simple and well established by law: that the accused must be charged with a crime in demanding state and be a fugitive from justice of such state. However, if in a habeas corpus proceeding, accused can successfully controvert either, he or she is entitled to be discharged.

In the instant case petitioner produced five witnesses to support the contention that she was not in the state of Texas at the time of the alleged crime. Their testimony was clear, cogent and most convincing. The hospital records bear out the fact that petitioner's one year old child was confined during the month in which the crime was committed. The witness Price testified positively that she took petitioner to the hospital each and every day during the

child's confinement and that petitioner was the only one who could give the baby its evening meal. This was also substantiated by witness Pugh, petitioner's mother. Great weight was given by this court to the testimony of Mrs. Sarah McArthur, who was then and is now a nurse at the University Hospital who saw petitioner as she visited her baby each and every day during the month of July. Neither the District Court nor the Governor's office had the benefit of this testimony as she was not called upon to testify at either hearing. Petitioner's husband who lives in Midland, Texas, substantiated the testimony.

The demanding state presented one witness who identified petitioner though he had not seen her before or after the alleged crime, nine months prior to the hearing. There was evidence that said witness had an obvious visual impairment and portrayed the actions of a person somewhat retarded.

■ The court was impressed by the fact that no mention was made by the witness for the demanding state relative to petitioner being six months pregnant at the time the alleged crime was committed. It is doubtful if said witness could have been so positive without noticing this feature at the time. No expert testimony was presented by the state as to handwriting comparison and this court does not attempt to make any comparison or hold itself out as capable of doing so. The court is of the opinion that the combined evidence of petitioner is clear, positive, satisfactory, and convincing and is sufficient to controvert the assertion that she is a fugitive from justice. This court approves the language set forth in 39 C.J.S. Habeas Corpus § 39, p. 558:

"The court will not discharge a defendant arrested under an extradition warrant where there is merely contradictory evidence on subject of presence in, or absence from the state, as habeas corpus is not the proper proceeding to try the question of alibi, or any question as to the guilt or innocence of accused. If, however, it clearly appears that accused is not in fact a fugitive, discharge will not be refused simply because there is some conflict in the evidence."

■ In a habeas corpus proceeding resisting extradition the burden of proof is upon the petitioner to controvert the allegation as to being a fugitive from justice. In the case at bar the court feels the burden was assumed and proof was adequate to require her discharge.

The writ is therefore granted and petitioner ordered discharged.

POWELL, P. J., and BRETT, J., concur.